IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| MELANIE DEBOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 20-cv-06180-SRB |
| | ) |
| SHERRIE KORNEMAN, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendant Sherrie Korneman's Motion to Dismiss Plaintiff's Complaint. (Doc. #10.) For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND

This lawsuit arises out of the death of Christopher Deboe ("Deboe"), who was stabbed by fellow inmate Laurance Logan ("Logan") while incarcerated at the Western Reception Diagnostic and Correctional Center ("WRDCC") operated by the Missouri Department of Corrections. Plaintiff Melanie Deboe ("Plaintiff") is the surviving spouse of Deboe. She sues Sherrie Korneman ("Korneman"), the acting supervisor of WRDCC, and four "John Does," correctional officers at WRDCC at the time of Deboe's death. Plaintiff alleges the defendants violated Deboe's Eighth Amendment rights by failing to protect him from harm by Logan and failing to provide medical treatment after the stabbing. Briefly, the relevant facts taken from Plaintiff's Complaint are set forth below.

Prior to the incidents giving rise to this lawsuit, Logan was a known violent offender and white supremacist. On September 22, 2015, on two separate occasions, Logan assaulted prison

guards at WRDCC. Despite Logan's reputation and past behavior, he was placed in WRDCC's general population where Deboe, an African American male, was located. Logan affiliated with Millsap, another WRDCC inmate also known as a violent offender and white supremacist.

In early December 2015, prison staff observed a verbal altercation in which Logan and Millsap allegedly threatened to kill Deboe. Deboe reported Logan's and Millsap's threats to prison staff and requested that he be placed in isolation or moved away from them. Defendants did not move Deboe, Logan, or Millsap, nor did Defendants investigate the reported threat. On December 7, 2015, Millsap stated during a recorded phone call that a desk leg "would make a good shank."[1] (Doc. #1, ¶ 28.) Shortly after, Logan and Millsap damaged an unmanned guard's desk and removed one of its legs, which Logan then proceeded to sharpen into a weapon. That same day, Logan was "written up" for destroying the guard's desk. (Doc. #1, ¶ 20.) However, the prison guards and staff never searched Logan's cell or otherwise investigated the whereabouts of the missing desk leg.

On December 9, 2015, Logan—still in possession of the sharpened desk leg—was allowed to wander freely about the cell block while other inmates were locked down in their cells. Defendants John Does were stationed in the cell block, but they left shortly before all the inmates were released from their cells. As Deboe exited his cell, Logan stabbed him with the sharpened desk leg fourteen times. Other inmates shouted or attempted to gain the attention of WRDCC staff, but several minutes passed before any staff responded to the calls. Defendant John Does and other staff stood over Deboe as he "bled to death." (Doc. #1, ¶ 50.) Approximately fifteen minutes passed before medical personnel arrived, and thirty minutes

---

[1] Plaintiff's Complaint first alleges this recorded statement was made by Millsap (Doc #1, ¶ 28), but later alleges the statement was made by Logan (Doc. #1, ¶¶ 55(g), 60). In her response brief, Plaintiff clarifies that Logan and Millsap were talking to each other during the recorded conversation when this statement was made. (Doc. #11, p. 4). The Court finds the source of the statement does not make a material difference in the outcome of this motion.

passed before Deboe was placed in an ambulance.  Deboe later died from his injuries while in the care and custody of Defendants.

Plaintiff subsequently filed this lawsuit under 42 U.S.C. § 1983, asserting Defendants violated Deboe's Eighth Amendment civil rights by their: failure to use adequate procedures, deliberate indifference and/or gross negligence (Count I, against all Defendants); failure to train (Count II, against Korneman); negligent assignment (Count III, against Korneman); negligent supervision (Count IV, against Korneman); and failure to provide adequate medical treatment (Count V, against all Defendants).  Plaintiff sues each Defendant in both his or her individual and official capacities on each Count.  Plaintiff seeks monetary damages, including compensatory damages, punitive damages, and attorney's fees.  Korneman, the only Defendant to enter an appearance in this case thus far, now moves the Court to dismiss the Complaint as it pertains to her under Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

Rule 12(b)(6) provides that a defendant may move to dismiss for "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### III. DISCUSSION

Korneman argues she should be dismissed from this lawsuit because (1) Plaintiff's claims against Korneman in her official capacity are barred, and (2) Plaintiff's claims against Korneman in her individual capacity fail to state a § 1983 claim because Korneman is entitled to qualified immunity. Plaintiff disagrees, arguing she has done enough at this early stage to survive dismissal. The parties' arguments are addressed below.

**A. Claims Against Korneman In Her Official Capacity**

Korneman argues that the claims against her in her official capacity are barred by the Eleventh Amendment. Plaintiff contends her official-capacity claims should not be dismissed because Plaintiff seeks prospective relief. The Court agrees with Korneman.

Under § 1983, a plaintiff may recover damages from "[e]very person who, under the color of any statute . . . or regulation" causes "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." However, the Eleventh Amendment prohibits "any [federal] suit . . . commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. "A suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983." *Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (citing *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989)). However, state officials "may be sued in their official capacities for prospective, injunctive relief." *Campbell v. Ark. Dep't of Corr.*, 155 F.3d 950, 962 (8th Cir. 1998).

"[A] court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (cleaned up). While Plaintiff alleges the WRDCC policies and practices in 2015 violated Deboe's constitutional

rights, Plaintiff fails to allege this violation is ongoing. Also, the prayer for relief for each count seeks monetary damages including compensatory and punitive damages connected to the death of Deboe. Such relief is not prospective. *See Edelman v. Jordan*, 415 U.S. 651, 668 (1974) (holding the Eleventh Amendment bars relief which "requires payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation"); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (holding that a state "is immune from punitive damages under 42 U.S.C. § 1983"). In turn, the Court finds Plaintiff's claims against Korneman in her official capacity are barred. Accordingly, those claims on all counts are dismissed.

### B. Qualified Immunity

"Qualified immunity shields state officials from both civil liability and the burdens of litigation unless their conduct violates a clearly established right of which a reasonable person would have known." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018). "[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity must show that they are entitled to qualified immunity on the face of the complaint." *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) (quotation marks and citations omitted); *see also Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995) (noting "civil rights pleadings should be construed liberally" and that a motion to dismiss should be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief"). "To determine whether a public official is entitled to immunity, courts conduct a two-pronged analysis: whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and whether the right was clearly established at the time of the alleged infraction." *Kulkay*, 847 F.3d at 642.

5

Case 5:20-cv-06180-SRB   Document 14   Filed 06/17/21   Page 5 of 14

Plaintiff alleges that Defendants, including Korneman, violated the Eighth Amendment's ban on cruel and unusual punishment. Specifically, Count I stems from Defendants' failure to protect Deboe from harm by Logan. Counts II, III, and IV allege similar failure-to-protect claims, but are specific to Korneman and her supervisory role. Count V stems from Defendants' alleged failure to provide adequate medical treatment after Logan stabbed Deboe. Korneman contends she is entitled to qualified immunity on all Counts. The Court addresses the parties' arguments below.

1. **Count I – Failure to use Adequate Procedures, Deliberate Indifference, and/or Gross Negligence as to All Defendants.**

The Court finds, and Korneman agrees, that "the Eighth Amendment encompasses an inmate's right to be protected from harm by fellow inmates." *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).[2] "Of course, prison officials do not commit a constitutional violation every time one prisoner attacks another." *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007). "In order to establish an eighth amendment failure-to-protect claim, a plaintiff must show that the prison official was deliberately indifferent to a 'substantial risk of serious harm.'" *Id.* (quoting *Farmer*, 511 U.S. at 828).

> In doing so, a prisoner must satisfy two requirements, one objective and one subjective. The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious; i.e., whether the inmate is incarcerated under conditions posing a substantial risk of serious harm. The second requirement is subjective and requires that the inmate prove that the prison official had a sufficiently culpable state of mind.

*Walls v. Tadman*, 762 F.3d 778, 782 (8th Cir. 2014) (quotation marks and citations omitted).

---

[2] Plaintiff argues, and Korneman does not dispute, that this right was clearly established at the time of the alleged infraction. *See Young v. Selk*, 508 F.3d 868, 875 (8th Cir. 2007) ("[I]t was no doubt clearly established long before 2004, when [the plaintiff] was assaulted, that the eighth amendment required prison officials to protect prisoners from violence at the hands of other prisoners.") (quotation marks and citation omitted).

### i. Objective Requirement

Korneman does not argue the objective requirement of deliberate indifference. Upon review, the Court finds Plaintiff adequately alleges that Deboe was incarcerated under conditions posing a substantial risk of serious harm. According to the Complaint, Logan, a known violent inmate and white supremacist had previously threatened to kill Deboe, an African American. Logan was not only able to acquire a desk leg and sharpen it into a deadly weapon, but he then possessed that weapon for approximately three days until he was able to walk freely about the prison block while Deboe remained locked in his cell, using his tactical advantage to allegedly stab and kill Deboe. Plaintiff alleges Defendants knew the leg was missing and Logan was written up for destroying the desk.

The Eighth Circuit has found the objective requirement satisfied in lesser circumstances. *See Young*, 508 F.3d at 873 (finding the objective requirement satisfied where the plaintiff reported a threat and the record "support[ed] an inference that [the attacker] was a dangerous man who was particularly volatile, that he was easily offended and enraged, and that he was willing to attack"). Like the attacker in *Young*, Plaintiff alleges Logan was a volatile inmate who had threatened Deboe, was willing to attack him, but he also possessed a weapon. The Court finds Plaintiff satisfies the objective requirement by adequately alleging that Deboe was incarcerated under conditions posing a substantial risk of serious harm.

### ii. Subjective Requirement

The crux of Korneman's argument is that Plaintiff has not alleged that Korneman had the requisite knowledge, either regarding the insufficiencies in prison policies or the particularized threat made to Deboe, to establish she acted with deliberate indifference. Korneman contends that Plaintiff instead solely relies on Korneman's position in the prison as a basis for asserting

liability against her. Plaintiff argues that she does allege Korneman had actual knowledge to satisfy the subjective requirement. The Court, in part, agrees with Plaintiff.

"In a § 1983 case, an official 'is only liable for his . . . own misconduct' and is not 'accountable for the misdeeds of [his] agents' under a theory such as respondeat superior or supervisor liability." *Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 928 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677). "Further, a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Ouzts v. Cummings*, 825 F.2d 1276, 1277 (8th Cir. 1987). "These defendants are thus liable only if they personally displayed deliberate indifference to the risk that [the inmate] would be assaulted[.]" *Whitson*, 602 F.3d at 928. "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young*, 508 F.3d at 873 (internal citation omitted). "Negligence, and . . . even gross negligence . . . is insufficient to prove a violation of [the inmate's] constitutional rights." *Tucker*, 276 F.3d at 1002.

The Court finds the Complaint sufficiently alleges facts which plausibly support the inference that Korneman knew of the particular risk to Deboe's health and safety posed by Logan. Plaintiff alleges that Korneman knew Logan was a violent offender, a white supremacist, that he had previously attacked two guards, and that he had removed a desk leg which he later turned into a weapon. Plaintiff further alleges that Korneman knew of the recorded phone conversation in which either Millsap or Logan indicated a desk leg would make a good weapon and then began destroying the desk. (Doc. #1, ¶ 60.) Plaintiff also alleges Logan and Millsap threatened to kill Deboe and that he reported his fears for his life. While the Complaint is not clear as to whom the report was made, this lack of clarity does not create an insuperable bar to relief, particularly because Plaintiff specifically alleges "Defendants knew . . . that Logan and

Millsap had threatened to kill Mr. Deboe." (Doc. #1, ¶ 35.) The Court finds that these allegations, taken as true, plausibly state that Korneman had direct knowledge of the particularized threat to Deboe's health and safety.

In seeking dismissal, Korneman relies, in part, on *Prater v. Dahm* for the proposition that "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." 89 F.3d 538, 541 (8th Cir. 1996). However, in *Young v. Selk* the Eighth Circuit clarified its statement in *Dahm*, noting: "by stating that threats, 'under all circumstances,' do not impute a knowledge of a substantial risk of harm, we certainly implied that in some circumstances, the knowledge of threats will support such a finding." *Young*, 508 F.3d at 874. At this early stage, the Court finds the Complaint alleges sufficient facts which plausibly support the inference that Korneman had knowledge of a substantial risk of harm to Deboe and that Plaintiff does not solely impute knowledge on Korneman due to her supervisory role. Korneman's alleged failure to isolate Deboe, Logan, or Millsap, investigate the location of the desk leg, or otherwise act in the face of the substantial risk plausibly supports the inference that Korneman had the requisite culpable state of mind to support the subjective requirement of deliberate indifference. Thus, the Court finds Count I states a claim under § 1983.

To the extent Plaintiff argues in Count I that Korneman "should have known" these facts and that her response (or lack thereof) amounts to gross negligence, those theories of liability fail to state a claim. As previously stated, even gross negligence is insufficient to find Korneman liable. *See Tucker*, 276 F.3d at 1002. Plaintiff also summarily alleges that Defendants allowed violent attacks to occur with such frequency to put the staff on notice of a substantial risk of harm, and that inadequacy of the polices, practices, and procedures made it foreseeable that an attack would occur. As discussed in more detail below, the Court agrees with Korneman that

these assertions by themselves are not supported by facts as to impute knowledge on Korneman as to the risk to Deboe's health and safety. The Court thus finds Count I states a claim under § 1983 against Korneman only to the extent it is based on the allegations that Korneman had actual knowledge of the substantial risk of harm.

In sum, Plaintiff sufficiently alleges Korneman's direct knowledge of the risk to Deboe and that she failed to reasonably act, and the Court determines that Korneman is not entitled to qualified immunity on the face of the Complaint as to Count I. The truth of Korneman's actual knowledge of the substantial risk of harm, and her deliberate indifference to it, is best determined after the benefit of discovery.

### 2. Counts II, III, and IV – Failure to Train, Negligent Assignment, Negligent Supervision

Counts II, III, and IV allege Korneman is liable for the failure to protect Deboe based on her alleged failure to train (Count II), negligent assignment (Count III), and negligent supervision (Count IV). Korneman argues that beyond the mere assertion that she failed to train, assign, or supervise her staff, the Complaint does not allege sufficient facts to state a claim under § 1983. Plaintiff does not directly address Korneman's arguments against Counts II, III, and IV.

A supervisor is liable under § 1983 if she directly participates in a constitutional violation or "if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996). "A failure-to-supervise claim may be maintained only if the official demonstrated deliberate indifference or tacit authorization of the offensive acts." *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) (quotation marks and citations omitted). "This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Andrews*, 98 F.3d at 1078.

In other words, "[w]hen a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *S.M. v. Krigbaun*, 808 F.3d 335, 340 (8th Cir. 2015) (citing *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012)). "This rigorous standard requires proof that the supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right. Allegations of generalized notice are insufficient." *S.M.*, 808 F.3d at 340. At the motion to dismiss stage, a plaintiff need not "plead the existence of an unconstitutional policy of custom." *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). But "[a]t a minimum, the complaint must allege facts which would support the existence of an unconstitutional policy or custom." *Id.* Supervisory liability will ordinarily not be imposed based upon a "single incident, or a series of isolated incidents." *Howard v. Adkinson*, 887 F.2d 134, 138 (8th Cir. 1989).

Upon review, the Court agrees with Korneman. Plaintiff does not allege a pattern of unconstitutional acts committed by subordinates which suggests that the risk to Deboe's health and safety were the result of an unconstitutional policy of training, assignment, or supervision. Plaintiff does allege that Defendants "[a]llow[ed] such violent attacks to occur with sufficient frequency as to place the Warden and guards on notice and to create a pervasive risk of harm that put prisoners in reasonable fear of harm" and "faile[ed] to put in place adequate conditions or procedures to prevent such incidents from occurring when they individually and collectively knew . . . the practices of [WRDCC] made it highly foreseeable that some inmates, and in particular, [Deboe] would be killed by violent inmates[.]" (Doc. #1, ¶¶ 56(j)-57.) However, the

Court finds these are mere legal conclusions. Instead, the facts of the Complaint suggest Deboe's substantial risk of harm was an isolated incident. While the alleged facts support a plausible inference that Korneman personally knew of a substantial risk of harm and failed to protect Deboe, there are no alleged facts from which it could be inferred that WRDCC had a policy, custom, or practice of not investigating property damage or reported threats, guards abandoning their post as prisoners were released from their cells, allowing prisoners to harness weapons for multiple days, or allowing some prisoners to move freely while others were on lock down. Counts II, III, and IV thus fail to state a § 1983 claim. Regarding Count III and Count IV, the Court again reiterates that negligence, even gross negligence, and respondeat superior theories of liability do not state a claim under § 1983.

However, the Court notes that "[w]hen a complaint is filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right." *Doe*, 340 F.3d at 614. This observation is particularly true where, as here, Plaintiff is suing on behalf of a deceased inmate and is therefore even further removed from the policies and customs of WRDCC. In turn, while Plaintiff's Complaint at this time does not allege a pattern of unconstitutional conduct, the allegations do not entirely foreclose the possibility that a policy, practice, or unofficial custom of unconstitutional conduct could be found during discovery. As such, Counts II, III, and IV are dismissed without prejudice.

### 3. Count V – Failure to Provide Adequate Medical Treatment

Korneman argues Count V should be dismissed as it pertains to her because Plaintiff does not proffer any allegations of Korneman's knowledge of Deboe's medical condition at the time of the stabbing. Plaintiff argues that she has adequately alleged that Korneman failed to provide

training or adequate staffing numbers to ensure that Deboe received adequate medical treatment. The Court agrees with Korneman.

It is well-established that "deliberate indifference to the serious medical needs of a prisoner constitutes cruel and unusual punishment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) (citing *Estelle v. Gamble*, 429 U.S. 97 102-03 (1976)). "A prison official exhibits deliberate indifference when the official actually knows of and disregards a prisoner's serious medical needs." *Id.* (quotations marks and citations omitted). Unlike the allegations that Korneman knew of the substantial risk of harm by Logan leading up to the stabbing, Plaintiff does not allege that Korneman knew that Deboe had serious medical needs at the time of the stabbing. Plaintiff's allegations instead are specific to the delayed response of Defendants John Does in providing Deboe with medical treatment. No facts are alleged in which the Court can infer Korneman directly participated in the decision to ignore inmate calls for medical attention. The Court thus finds Plaintiff fails to allege Korneman's deliberate indifference to Deboe's serious medical needs.

To the extent Plaintiff seeks to recover on a theory of supervisory liability—namely, that Korneman failed to train her staff or had inadequate staffing numbers to properly respond to medical emergencies in a reasonable amount of time—the Court finds Count V fails for the same reasons that Counts II, III, and IV fail. Plaintiff does not allege that Korneman or WRDCC had a policy or custom which unconstitutionally delayed the medical treatment for injured inmates, nor pleads facts which indicate that Deboe's situation was more than an isolated incident. In turn, Count V fails to state a claim under § 1983 as it pertains to Korneman. Count V is therefore dismissed without prejudice.

13
Case 5:20-cv-06180-SRB   Document 14   Filed 06/17/21   Page 13 of 14

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Korneman's Motion to Dismiss Plaintiff's Complaint (Doc. #10) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED insofar as all official-capacity claims against Korneman are dismissed, and the individual-capacity claims against Korneman in Counts II, III, IV, and V are dismissed without prejudice. The motion is DENIED insofar as the Count I individual-capacity claim against Korneman survives, but only to the extent it is based on actual knowledge.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
Dated: June 17, 2021　　　　　　　　　　　UNITED STATES DISTRICT JUDGE