IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| MELANIE DEBOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-06180-SRB |
| | ) | |
| SHERRIE KORNEMAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants Sherrie Korneman, Ryan Crews, Ryan Brownlow, Brandy Hurt, Brian Deshon, and Andrew Fritzinger's (collectively, "Moving Defendants") Motion to Dismiss Plaintiff's Amended Complaint. (Doc. #33.) For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND

This lawsuit arises out of the death of Christopher Deboe ("Deboe"), who was stabbed by fellow inmate Laurance Logan ("Logan") while incarcerated at the Western Reception Diagnostic and Correctional Center ("WRDCC") operated by the Missouri Department of Corrections. Plaintiff Melanie Deboe ("Plaintiff") is the surviving spouse of Deboe. Plaintiff sues Sherrie Korneman ("Korneman"), the then-acting Assistant Supervisor of the WRDCC, Ryan Crews ("Crews"), the then-acting Supervisor of the WRDCC, and Ryan Brownlow ("Brownlow"), the current-acting Supervisor of the WRDCC (collectively, "Defendant Wardens"). Korneman is sued in her individual capacity, Crews is sued in both his individual and official capacities, and Brownlow is sued in his official capacity.[1] Plaintiff also sues Brandy

---

[1] In the Amended Complaint, Plaintiff denotes in the heading that Brownlow is sued in "his official capacities." (Doc. #32, p. 1.) Plaintiff again specifically states under the "Parties" section of the Amended Complaint that, "Brownlow

Hurt ("Hurt"), Andrew Fritzinger ("Fritzinger"), Cole A. Reed ("Reed"), Brian Deshon ("Deshon"), McCarty,[2] and Wesley Deweese ("Deweese"), all of whom are or were correctional officers at WRDCC (collectively, "Defendant Officers"). Defendant Officers are sued in their individual and official capacities. Plaintiff alleges the defendants violated Deboe's Eighth Amendment rights by failing to protect him from harm by Logan and failing to provide medical treatment after the stabbing. Briefly, the relevant facts taken from Plaintiff's Amended Complaint[3] (Doc. #32) are set forth below.

Prior to the incidents giving rise to this lawsuit, Logan was a known violent offender and white supremacist. On September 22, 2015, on two separate occasions, Logan assaulted prison guards at WRDCC. Despite Logan's reputation and past behavior, he was placed in WRDCC's general population where Deboe, an African American male, was located. Logan affiliated with Millsap, another WRDCC inmate also known as a violent offender and white supremacist.

In early December 2015, prison staff observed a verbal altercation in which Logan and Millsap allegedly threatened to kill Deboe. Deboe reported Logan's and Millsap's threats to

---

is sued in his official capacity." (Doc. #32, ¶ 13.) Yet, in Count I through Count V, Plaintiff generically pleads that either all defendants or all Defendant Wardens are sued in their individual and official capacities. The Court thus finds that the Amended Complaint is at best ambiguous as to whether Brownlow is sued in only his official capacity or in both his individual and official capacities. Because "in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity," the Court finds that Brownlow is only sued in his official capacity. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). Additionally, even if Brownlow was sued in his individual capacity, the Court finds the Amended Complaint fails to state an individual-capacity claim against Brownlow as to all Counts.

[2] The Amended Complaint does not identify McCarty's first name.

[3] On June 17, 2021, the Court granted in part and denied in part Korneman's Motion to Dismiss Plaintiff's Original Complaint. (Doc. #14.) Compared to the Original Complaint, the Amended Complaint replaces certain "John Doe" correctional officers with Defendant Officers and adds a few specific facts related to Defendant Officers' alleged involvement in Deboe's death. The Amended Complaint also adds two WRDCC Supervisors, Crews and Brownlow. The Amended Complaint is otherwise identical to the Original Complaint. The parties also advance substantively similar arguments in support of and opposition to the pending motion to dismiss as the original motion to dismiss. In turn, most of the facts and analysis below are taken from the Court's June 17, 2021, Order. The current Order resolves the minor factual changes in the Amended Complaint and addresses the newly-added, moving defendants.

prison staff and requested that he be placed in isolation or moved away from them. The defendants did not move Deboe, Logan, or Millsap, nor did the defendants investigate the reported threat. On December 7, 2015, Millsap stated during a recorded phone call that a desk leg "would make a good shank."[4] (Doc. #32, ¶ 33.) Shortly after, Logan and Millsap damaged an unmanned guard's desk and removed one of its legs, which Logan then proceeded to sharpen into a weapon. That same day, Logan was "written up" for destroying the guard's desk. (Doc. #32, ¶ 25.) However, the prison guards and staff never searched Logan's cell or otherwise investigated the whereabouts of the missing desk leg.

On December 9, 2015, Logan—still in possession of the sharpened desk leg—was allowed to wander freely about the cell block while other inmates were locked down in their cells. McCarty and Hurt, who were stationed in the cell block, left right before the other inmates were released from their cells. No guards were present on the prison block. As Deboe exited his cell, Logan stabbed him with the sharpened desk leg fourteen times. Other inmates shouted or attempted to gain the attention of WRDCC staff including Reed, Hurt, and McCarty, but their screams were ignored. Reed eventually unlocked the door for McCarty and Hurt to enter the cell block. McCarty and Hurt, aware that a stabbing was occurring, failed to call a "10-50" which would have signaled to other prison staff that a stabbing was occurring. (Doc. #32, ¶ 55.) McCarty then incorrectly called for an institutional lockdown which could have only been authorized by a Warden or assistant Warden.

Other officers, including Fritzinger, Deshon, and Deweese, ignored the lockdown call, further delaying assistance for Deboe. Fritzinger and other prison staff ignored the medical

---

[4] Plaintiff's Complaint first alleges this recorded statement was made by Millsap (Doc #32, ¶ 33), but later alleges the statement was made by Logan (Doc #32, ¶¶ 72(g), 76). In her response brief, Plaintiff clarifies that Logan and Millsap were talking to each other during the recorded conversation when this statement was made. (Doc. #36, p. 4). The Court finds the source of the statement does not make a material difference in the outcome of this motion.

3

emergency call, and several minutes passed before staff responded to Deboe. No Defendant Officer attempted to assist Deboe; instead, McCarty, Hurt, and other staff stood over Deboe as he "bled to death." (Doc. #32, ¶ 64.) Approximately fifteen minutes passed before medical personnel arrived, and thirty minutes passed before Deboe was placed in an ambulance. Deboe later died from his injuries while in the care and custody of the defendants.

Plaintiff subsequently filed this lawsuit under 42 U.S.C. § 1983. The Amended Complaint asserts that The defendants violated Deboe's Eighth Amendment civil rights by their: failure to use adequate procedures, deliberate indifference and/or gross negligence (Count I, against all The defendants); failure to train (Count II, against Defendant Wardens); negligent assignment (Count III, against Defendant Wardens); negligent supervision (Count IV, against Defendant Wardens); and failure to provide adequate medical treatment (Count V, against all The defendants). Plaintiff seeks monetary damages for each Count, including compensatory damages, punitive damages, and attorney's fees. Moving Defendants, the only defendants to enter an appearance in this case thus far, now move for the Court to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

Rule 12(b)(6) provides that a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556

4

Case 5:20-cv-06180-SRB   Document 37   Filed 01/07/22   Page 4 of 15

U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### III. DISCUSSION

Moving Defendants argue the claims in this lawsuit should be dismissed because (1) Plaintiff's claims against the defendants in their official capacity are barred, and (2) Plaintiff's claims against the defendants in their individual capacity fail to state a § 1983 claim because the defendants are entitled to qualified immunity. Plaintiff disagrees, arguing she has done enough at this early stage to survive dismissal. The parties' arguments are addressed below.

#### A. Claims Against Defendants in Their Official Capacity

Moving Defendants argue that the claims against them in their official capacity are barred by the Eleventh Amendment. Plaintiff contends her official-capacity claims should not be dismissed because Plaintiff seeks prospective relief. The Court agrees with Moving Defendants.

Under § 1983, a plaintiff may recover damages from "[e]very person who, under the color of any statute . . . or regulation" causes "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." However, the Eleventh Amendment prohibits "any [federal] suit . . . commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. "A suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983." *Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (citing *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989)). However, state officials "may be sued in their official capacities for prospective, injunctive relief." *Campbell v. Ark. Dep't of Corr.*, 155 F.3d 950, 962 (8th Cir. 1998).

"[A] court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (cleaned up). While Plaintiff alleges the WRDCC policies and practices in 2015 violated Deboe's constitutional rights, Plaintiff fails to allege this violation is ongoing. Also, the prayer for relief for each count seeks monetary damages including compensatory and punitive damages connected to the death of Deboe. Such relief is not prospective. *See Edelman v. Jordan*, 415 U.S. 651, 668 (1974) (holding the Eleventh Amendment bars relief which "requires payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation"); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (holding that a state "is immune from punitive damages under 42 U.S.C. § 1983").

In turn, the Court finds the "prospective relief" exception to sovereign immunity does not apply, and therefore Plaintiff's claims against the defendants in their official capacities are barred. Accordingly, those claims on all counts are dismissed. As such, Brownlow, who is only sued in his official capacity, is dismissed from this lawsuit.

### B. Qualified Immunity

Plaintiff alleges that the defendants[5] violated the Eighth Amendment's ban on cruel and unusual punishment. Specifically, Count I stems from the defendants' failure to protect Deboe from harm by Logan. Counts II, III, and IV allege similar failure-to-protect claims, but are

---

[5] As already explained above, Brownlow is dismissed from this case because Plaintiff does not assert any individual capacity claims against him. However, even assuming Plaintiff did, Plaintiff only alleges that Brownlow is the current Supervisor of WRDCC, while Korneman and Crews were the Assistant Supervisor and Supervisor of the WRDCC "at all relevant times." (Doc. #32, ¶¶ 8, 10, 12.) Because Plaintiff fails to allege Brownlow's involvement at the WRDCC at any time relevant to the threat to Deboe's life and Deboe's serious medical needs, Plaintiff fails to state an individual-capacity claim against Brownlow on all counts.

6

Case 5:20-cv-06180-SRB   Document 37   Filed 01/07/22   Page 6 of 15

specific to Defendant Wardens in their supervisory role, namely failure to train, negligent assignment, and negligent supervision respectively. Count V stems from the defendants' alleged failure to provide adequate medical treatment after Logan stabbed Deboe. Moving Defendants contend they are entitled to qualified immunity on all Counts. The Court addresses the parties' arguments below.

"Qualified immunity shields state officials from both civil liability and the burdens of litigation unless their conduct violates a clearly established right of which a reasonable person would have known." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018). "[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity must show that they are entitled to qualified immunity on the face of the complaint." *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) (quotation marks and citations omitted). "To determine whether a public official is entitled to immunity, courts conduct a two-pronged analysis: whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and whether the right was clearly established at the time of the alleged infraction." *Kulkay*, 847 F.3d at 642.

### 1. Count I – Failure to Use Adequate Procedures, Deliberate Indifference, and/or Gross Negligence as to All Defendants.

"[T]he Eighth Amendment encompasses an inmate's right to be protected from harm by fellow inmates." *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).[6] "Of course, prison officials do not commit a constitutional violation every time one prisoner attacks another." *Young v. Selk*, 508 F.3d 868, 872 (8th Cir.

---

[6] This right was clearly established at the time of the alleged assault. *See Young v. Selk*, 508 F.3d 868, 875 (8th Cir. 2007) ("[I]t was no doubt clearly established long before 2004, when [the plaintiff] was assaulted, that the eighth amendment required prison officials to protect prisoners from violence at the hands of other prisoners.") (quotation marks and citation omitted).

2007). "In order to establish an eighth amendment failure-to-protect claim, a plaintiff must show that the prison official was deliberately indifferent to a 'substantial risk of serious harm.'" *Id.* (quoting *Farmer*, 511 U.S. at 828).

> In doing so, a prisoner must satisfy two requirements, one objective and one subjective. The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious; i.e., whether the inmate is incarcerated under conditions posing a substantial risk of serious harm. The second requirement is subjective and requires that the inmate prove that the prison official had a sufficiently culpable state of mind.

*Walls v. Tadman*, 762 F.3d 778, 782 (8th Cir. 2014) (quotation marks and citations omitted).

### i. Objective Requirement

Moving Defendants do not argue the objective requirement of deliberate indifference. Upon review, and for the same reasons stated in the Court's previous Motion to Dismiss Order (Doc. #14), the Court finds Plaintiff adequately alleges that Deboe was incarcerated under conditions posing a substantial risk of serious harm. Plaintiff has thus satisfied the objective requirement.

### ii. Subjective Requirement

Moving Defendants argue that Plaintiff has not alleged that the defendants had the requisite knowledge, either regarding the insufficiencies in prison policies or the particularized threat made to Deboe, to establish they acted with deliberate indifference. Moving Defendants contend that Plaintiff instead relies solely on the defendants' positions in the prison as a basis for asserting liability against them. Plaintiff argues that she does allege the defendants had actual knowledge to satisfy the subjective requirement. The Court, in part, agrees with Plaintiff.

"In a § 1983 case, an official 'is only liable for his . . . own misconduct' and is not 'accountable for the misdeeds of [his] agents' under a theory such as respondeat superior or supervisor liability." *Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 928 (8th Cir. 2010) (quoting

*Iqbal*, 556 U.S. at 677). "Further, a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Ouzts v. Cummings*, 825 F.2d 1276, 1277 (8th Cir. 1987). "These defendants are thus liable only if they personally displayed deliberate indifference to the risk that [the inmate] would be assaulted[.]" *Whitson*, 602 F.3d at 928. "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young*, 508 F.3d at 873 (internal citation omitted). "Negligence, and . . . even gross negligence . . . is insufficient to prove a violation of [the inmate's] constitutional rights." *Tucker*, 276 F.3d at 1002.

The Court finds the Amended Complaint sufficiently alleges facts which plausibly support the inference that the defendants knew of the particular risk to Deboe's health and safety posed by Logan. Plaintiff alleges that the defendants knew Logan was a violent offender, a white supremacist, that he had previously attacked two guards, and that he had removed a desk leg which he later turned into a weapon. Plaintiff further alleges that the defendants knew of the recorded phone conversation in which either Millsap or Logan indicated a desk leg would make a good weapon and then began destroying the desk. (Doc. #32, ¶ 76.) Plaintiff also alleges Logan and Millsap threatened to kill Deboe and that he reported his fears for his life. While the Amended Complaint is not clear as to whom the report was made to, this lack of clarification does not warrant dismissal of this claims, particularly because Plaintiff specifically alleges "Defendants knew . . . that Logan and Millsap had threatened to kill Mr. Deboe." (Doc. #32, ¶ 40.) The Court finds that these allegations, taken as true, plausibly state that the defendants had direct knowledge of the particularized threat to Deboe's health and safety.

At this early stage, the Court finds the Amended Complaint alleges sufficient facts which plausibly support the inference that the defendants had knowledge of a substantial risk of harm to

9
Case 5:20-cv-06180-SRB    Document 37    Filed 01/07/22    Page 9 of 15

Deboe and that Plaintiff does not solely impute knowledge on the defendants due to their role as a correctional officer or supervisor. The defendants' alleged failure to isolate Deboe, Logan, or Millsap, investigate the location of the desk leg, or otherwise act in the face of the substantial risk plausibly supports the inference that the defendants had the requisite culpable state of mind to support the subjective requirement of deliberate indifference. Thus, the Court finds Count I states a claim under § 1983.

To the extent Plaintiff argues in Count I that the defendants "should have known" these facts and that their response (or lack thereof) amounts to gross negligence, those theories of liability fail to state a claim. As previously stated, even gross negligence is insufficient to find the defendants liable. *See Tucker*, 276 F.3d at 1002. Plaintiff also summarily alleges that the defendants allowed violent attacks to occur with such frequency to put the staff on notice of a substantial risk of harm, and that inadequacy of the polices, practices, and procedures made it foreseeable that an attack would occur. As discussed in more detail below, the Court agrees with the defendants that these assertions by themselves are not supported by facts as to impute knowledge on Defendant Wardens as to the risk to Deboe's health and safety. The Court thus finds Count I states a claim under § 1983 against the defendants only to the extent it is based on the allegations that the defendants had actual knowledge of the substantial risk of harm.

In sum, Plaintiff sufficiently alleges the defendants' direct knowledge of the risk to Deboe and that they failed to reasonably act, and the Court determines that the defendants are not entitled to qualified immunity on the face of the Amended Complaint as to Count I. The truth of the defendants' actual knowledge of the substantial risk of harm, and their deliberate indifference to it, is best determined after the benefit of discovery.

### 2. Counts II, III, and IV – Failure to Train, Negligent Assignment, Negligent Supervision

Counts II, III, and IV allege Defendant Wardens are liable for their failure to protect Deboe based on their alleged failure to train (Count II), negligent assignment (Count III), and negligent supervision (Count IV). Moving Defendants argue that beyond the mere assertion that Defendant Wardens failed to train, assign, or supervise staff, the Amended Complaint does not allege sufficient facts to state a claim under § 1983. Plaintiff argues that the Amended Complaint alleges sufficient facts which demonstrate Defendant Wardens have failed to implement effective training and procedures to prepare guards for such emergencies as Deboe faced.

A supervisor is liable under § 1983 if he or she directly participates in a constitutional violation or "if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996). "A failure-to-supervise claim may be maintained only if the official demonstrated deliberate indifference or tacit authorization of the offensive acts." *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) (quotation marks and citations omitted). "This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Andrews*, 98 F.3d at 1078.

In other words, "[w]hen a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *S.M. v. Krigbaun*, 808 F.3d 335, 340 (8th Cir. 2015) (citing *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012)). "This rigorous standard

requires proof that the supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right. Allegations of generalized notice are insufficient." *S.M.*, 808 F.3d at 340. At the motion to dismiss stage, a plaintiff need not "plead the existence of an unconstitutional policy or custom." *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). But "[a]t a minimum, the complaint must allege facts which would support the existence of an unconstitutional policy or custom." *Id.* Supervisory liability will ordinarily not be imposed based upon a "single incident, or a series of isolated incidents." *Howard v. Adkinson*, 887 F.2d 134, 138 (8th Cir. 1989).

Upon review, the Court agrees with Moving Defendants. Plaintiff does not allege a pattern of unconstitutional acts committed by subordinates which suggests that the risk to Deboe's health and safety were the result of an unconstitutional policy of training, assignment, or supervision. Plaintiff does allege that Defendant Wardens "[a]llow[ed] such violent attacks to occur with sufficient frequency as to place the Wardens and guards on notice and to create a pervasive risk of harm that put prisoners in reasonable fear of harm" and "fail[ed] to put in place adequate conditions or procedures to prevent such incidents from occurring when they individually and collectively knew . . . the practices of [WRDCC] made it highly foreseeable that some inmates, and in particular, [Deboe] would be killed by violent inmates[.]" (Doc. #32, ¶¶ 72(j)-73.)

The Court finds these are mere legal conclusions. Instead, the facts of the Amended Complaint suggest Deboe's substantial risk of harm was an isolated incident. While the alleged facts support a plausible inference that Korneman and Crews personally knew of a substantial risk of harm and failed to protect Deboe, there are no alleged facts from which it could be inferred that WRDCC had a policy, custom, or practice of not investigating property damage or

reported threats, guards abandoning their post as prisoners were released from their cells, allowing prisoners to harness weapons for multiple days, or allowing some prisoners to move freely while others were on lock down. Counts II, III, and IV thus fail to state a § 1983 claim. Regarding Count III and Count IV, the Court again reiterates that negligence, even gross negligence, and respondeat superior theories of liability do not state a claim under § 1983.

However, the Court notes that "[w]hen a complaint is filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right." *Doe*, 340 F.3d at 614. This observation is particularly true where, as here, Plaintiff is suing on behalf of a deceased inmate and is therefore even further removed from the policies and customs of WRDCC. In turn, while Plaintiff's Amended Complaint at this time does not allege a pattern of unconstitutional conduct, the allegations do not entirely foreclose the possibility that a policy, practice, or unofficial custom of unconstitutional conduct could be found during discovery. As such, Counts II, III, and IV as to Korneman and Crews are dismissed without prejudice.

### 3. Count V – Failure to Provide Adequate Medical Treatment

Moving Defendants argue Count V should be dismissed because Plaintiff "proffers no allegations of Defendant Wardens' knowledge of [Deboe's] medical condition at the time of the stabbing" and for Plaintiff's failure to allege the defendants' personal involvement. (Doc. #33, p. 9.) Plaintiff argues that she does adequately allege Defendant Officers' personal involvement, and that Defendant Wardens are liable for failing to staff and adequately train prison guards. The parties' arguments are addressed in turn.

It is well-established that "deliberate indifference to the serious medical needs of a prisoner constitutes cruel and unusual punishment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir.

13

Case 5:20-cv-06180-SRB   Document 37   Filed 01/07/22   Page 13 of 15

1996) (citing *Estelle v. Gamble*, 429 U.S. 97 102-03 (1976)). "A prison official exhibits deliberate indifference when the official actually knows of and disregards a prisoner's serious medical needs." *Id.* (quotations marks and citations omitted). Unlike the allegations that Korneman and Crews knew of the substantial risk of harm by Logan leading up to the stabbing, Plaintiff does not allege that Korneman and Crews knew that Deboe had serious medical needs at the time of the stabbing. No facts are alleged in which the Court can infer Korneman and Crews directly participated in the decision to ignore inmate calls for medical attention or delay Deboe's treatment. The Court thus finds Plaintiff fails to allege Korneman's and Crews' deliberate indifference to Deboe's serious medical needs.

To the extent Plaintiff seeks to recover on a theory of supervisory liability, the Court finds Count V fails for the same reasons as Counts II, III, and IV. Plaintiff does not allege that Korneman, Crews, or WRDCC had a policy or custom which unconstitutionally delayed the medical treatment for injured inmates, nor pleads facts which indicate that Deboe's situation was more than an isolated incident. In turn, Count V fails to state a claim under § 1983 as it pertains to Korneman and Crews. However, because discovery is ongoing, evidence of Korneman's and Crews's knowledge of a policy, practice, or unofficial custom of unconstitutional conduct could be found. Therefore, Count V against Korneman and Crews in their individual capacity is dismissed without prejudice.

Regarding the Defendant Officers, Plaintiff alleges deliberate indifference. Plaintiff alleges that McCarty, Hurt, and Reed ignored inmate screams. Plaintiff also alleges that Fritzinger, Deshon, and Deweese ignored the institutional lockdown, and Fritzinger and other staff ignored the medical emergency call. Additionally, Plaintiff alleges that McCarty, Hurt, and other staff stood over Deboe as he died instead of addressing his obvious, serious medical needs.

The Court finds these allegations are sufficient to state a claim based on Defendant Officers' deliberate indifference to Deboe's known serious medical needs. In turn, Moving Defendants' motion is denied on this point.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Moving Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. #33) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED insofar as all official-capacity claims are dismissed, Brownlow is dismissed, and the individual-capacity claims against Korneman and Crews in Counts II, III, IV, and V are dismissed without prejudice. The motion is DENIED insofar as the Count I individual-capacity claims against Korneman, Crews, and Defendant Officers survive, but only to the extent they are based on their actual knowledge, and Count V against Defendant Officers survives.

**IT IS SO ORDERED.**

Dated: January 7, 2022

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE